# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5807 | **DATE** | 2/15/2002 |
| **CASE TITLE** | American National Fire Insurance vs. Abrams, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | FEB 19 2002 | | 47 |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| JD | courtroom deputy's initials | | date mailed notice | | |

CLERK, U.S. DISTRICT COURT

Date/time received in central Clerk's Office mailing deputy initials

AMERICAN NATIONAL FIRE INSURANCE )
COMPANY, )
         )
         **Plaintiff,** )
         )    **Judge Ronald A. Guzman**
         **v.** )
         )    **99 C 5807**
**HAROLD ABRAMS, P.C., HAROLD R.** )
**ABRAMS, RON D. ABRAMS and STATE** )
**FARM MUTUAL AUTOMOBILE** )
**INSURANCE COMPANY,** )
         )
         **Defendants.** )

DOCKETED
FEB 19 2002

## MEMORANDUM OPINION AND ORDER

Before the Court are the cross motions for summary judgment of plaintiff American National

Fire Insurance Company ("American National") and defendants Harold R. Abrams, P.C., Harold

Abrams, and Ron Abrams (collectively "the Abrams defendants") pursuant to Fed. R. Civ. P.

("Rule") 56. For the foregoing reasons, plaintiff's motion is granted and defendants' motion is

denied.

### Facts

The following facts are undisputed. Defendants Harold and Ron Abrams formerly engaged

in the practice of law with the law firm of Harold R. Abrams, P.C. (Pl.'s LR 56.1(a)(3) ¶¶ 3-4.)

American National initially issued a "claims made" Lawyers Professional Liability policy to Harold

R. Abrams, P.C. for the period spanning October 18, 1995 to October 18, 1996. (*Id.* at ¶ 8.)[1] It

thereafter issued three additional one-year renewal "claims made" policies that were identical to the

---

[1]Thus, both Harold and Ron Abrams were insured under the policies. (*Id.* at ¶ 10.)

1995-96 policy in all relevant respects, covering the Abrams defendants through October 18, 1999. (*Id.* at ¶¶ 9-10.)

State Farm Mutual Automobile Insurance Company ("State Farm") filed a complaint against the firm and Harold Abrams individually in the United States District Court for the Northern District of Illinois on October 1, 1996. (*Id.* at ¶¶ 11-12.) State Farm filed its First Amended Complaint on November 26, 1997 naming Ron Abrams as an additional defendant. (*Id.* ¶ 14.)

In its Complaint and First Amended Complaint, State Farm alleged that the defendants engaged in a pattern of "racketeering activities" intended to defraud State Farm and other insurance companies through their involvement in a sudden stop accident scheme. (*Id.* at ¶ 16.) The "accidents" were allegedly caused by individuals who intentionally caused collisions between their older vehicles and vehicles driven by unsuspecting motorists. (*Id.*) State Farm alleged that the Abrams defendants were involved in the scheme, beginning in the 1980s, in that they "knowingly pursued fraudulent bodily injury claims against unsuspecting drivers and their insurance companies based upon the Sudden Stop Accidents." (*Id.* at ¶ 17.) State Farm also alleged that the Abrams defendants made false and misleading statements to State Farm regarding the facts and circumstances surrounding the accidents, the existence nature and severity of the injuries purportedly caused by the accidents, and the rendition and medical reasonableness of examinations and treatments. (*Id.*) The complaints alleged various violations of the RICO statute and common law fraud, and sought actual, treble, and punitive damages as well as costs and expenses. (*Id.* at ¶ 18.)

Harold Abrams and the firm were served on or about October 1, 1996. (*Id.* at ¶ 19.) They retained counsel soon thereafter, and did not provide notice to American National. (*Id.*) Ron Abrams was served on or about December 8, 1997. (*Id.* at ¶ 20.) He, too, retained counsel soon

thereafter, and did not notify American National. (*Id.*) The Abrams defendants sought coverage from State Farm, and in November, 1997, State Farm agreed to defend under a reservation of rights. (Defs.' LR 56.1(a)(3) ¶ 22.)[2]   However, it sent disclaimer of coverage letters to the Abrams defendants in January 1998 and discontinued its defense of them. (*Id.*) The Abrams defendants thereafter sought a declaratory judgment against State Farm. (*Id.* at ¶ 23.)

In the state court declaratory judgment action, the Abrams defendants took the position that the professional liability exclusion in their policy with State Farm had not been triggered, as they did not believe that the RICO case was a malpractice case.[3] (*Id.* at ¶ 24.) The judge ruled in favor of State Farm on cross motions for summary judgment, while describing the underlying action as one of insurance fraud. (*Id.* at ¶ 25.) However, the appellate court affirmed the decision, specifically finding that the allegations in the underlying suit fell within the professional services exclusion. (*Id.* at ¶¶ 28-29.) It was not until the appellate court's judgment of June 30, 1999 that the Abrams defendants believed that the American National policies covered the RICO allegations against them.[4] (*Id.* at ¶ 30.) They thereafter tendered the underlying RICO case to American for the first time on July 15, 1999.[5] (*Id.*)

At the point of tender, the case had been pending for three years, and it was scheduled for

---

[2]This fact is deemed admitted because it was not properly controverted. Local Rule 56.1(b), which the Court strictly enforces, provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."

[3]Deemed admitted pursuant to LR 56.1(b).

[4]Deemed admitted pursuant to LR 56.1(b).

[5]Deemed admitted pursuant to LR 56.1(b).

trial in October of 1999.[6] (Pl.'s LR 56.1(a)(3) ¶ 27.) The Abrams defendants reached a settlement agreement with State Farm prior to the trial date. (*Id.* at ¶ 29.) American National at no point participated in or monitored the RICO litigation or settlement discussions between State Farm and the Abrams defendants. (Defs.' LR 56.1(a)(3) ¶ 39.) Whether or not American National had a duty to defend is at issue in the present declaratory judgment action.

## Discussion

### I. LEGAL STANDARD

Under Rule 56(c), summary judgment is proper once the moving party has established that no genuine issue of material fact requiring resolution at trial can be found in the record and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing motions for summary judgment, courts must view the evidence in the light most favorable to the non-moving party, meaning that any doubt as to the existence of genuine issues of fact will be resolved against the moving party. *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir. 1987); *Sandler Assoc., L.P. v. Bellsouth Corp.*, 818 F. Supp. 695, 702 (D. Del. 1993). However, a party may not rest upon pleadings to oppose a motion for summary judgment and must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### II. THE DUTY TO DEFEND

The Court initially notes that "[t]he construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate

---

[6]The Abrams defendants were represented by counsel throughout the discovery process, various motions (including motions for summary judgment), and status and settlement conferences. (*Id.* at ¶ 23.)

subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 620 N.E.2d 1073, 1077 (1993); *see also Hurst-Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995). American National seeks a declaration that the Abrams defendants' professional liability policy does not provide coverage in the underlying action in which RICO and fraud claims were asserted against them. The Abrams defendants, on the other hand, seek a declaration that American National did have a coverage obligation to defend them in the underlying suit. They contend that the allegations of the complaint are covered by the policies and that American National had actual notice of the underlying litigation, thereby triggering its duty to defend.

The Court will first address whether or not the Abrams defendants satisfied the notice and reporting requirements because, if these were not satisfied, the duty to defend was not triggered and the issue of whether or not the allegations of the complaint fit within the scope of the policy becomes moot. *See Transamerica Ins. Co. v. Interstate Pollution Control, Inc.*, No. 92 C 20247, 1995 WL 360460, at *17 (stating that notice requirements are conditions precedent to coverage such that there is no coverage if they are not satisfied and other issues of coverage become moot). *See also Commercial Underwriters Ins. Co. v. Aires Envtl. Services*, 259 F.3d 792, 796 (7th Cir. 2001) ("Illinois law provides that the failure to fulfill a condition precedent that requires timely notice of potential claims relieves the insurer of any duty to defend or indemnify the insured."). "Coverage under plaintiff's claims-made policy is triggered when two events occur: (1) the claim must be made during the policy period, and (2) the claim must be reported during the policy period. Unless these two conditions occur, no coverage is provided under the claims-made policy." *Continental Cas. Co. v. Cuda*, 306 Ill. App. 3d 340, 349, 715 N.E.2d 663, 669 (1st Dist. 1999). The reporting and notice

requirements with regard to these policies are a major point of contention.

Because the notice requirement of claims-made policies serves a different purpose than the notice requirement of traditional occurrence policies, and this is vital to the outcome of the case, a discussion of these differences is warranted. The difference is this: "[t]he reporting requirement in a claims made policy is an element of coverage because it helps define the scope of coverage under the policy.[7] The notice provision in an occurrence policy does not define the scope of coverage, but, rather, assists the insurer in investigation, settling and defending covered claims." *National Union Fire Ins. Co. v. Bauman*, No. 90 C 0340, 1992 WL 1738, at *9 (N.D. Ill. Jan. 2, 1992). "In the 'occurrence' policy, the peril insured is the 'occurrence' itself. Once the occurrence takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the 'claims made' policy, it is the making of the claim which is the event and peril being insured and, subject to the policy language, regardless of when the occurrence took place." *Id.* at *5. For these reasons "Illinois gives insureds a "reasonable" time to notify insurers under occurrence policies," while imposing a more rigid notice requirement for claims-made policies. *Home Ins. Co. v. Adco Oil Co.*, 154 F.3d 739, 742 (7th Cir. 1998).

The United States Court of Appeals for the Seventh Circuit recently addressed the question of whether Illinois courts enforce notice requirements in claims-made policies. Its conclusion was, "[a]s far as we can see, it does." *Home Ins. Co. v. Adco Oil* Co., 154 F.3d 739, 742 (7th Cir. 1998).

---

[7] It defines the scope of coverage by providing a date after which the insurer is no longer liable under the policy. This is because the purpose and function "of the reporting requirement of a claims made policy is to eliminate an insurer's 'tail' exposure by minimizing 'the time between the insured event and the payment.'" *Bauman*, 1992 WL 1738, at *5 (quoting *Chas T. Main, Inc. v. Fireman's Fund Ins. Co.*, 551 N.E.2d 28, 30 (Mass. 1990)). As this provides insurers with greater certainty as to their exposure to liability, insureds under this type of policy pay lesser premiums and receive broader coverage. *Id.*

Moreover, "such reporting requirements are strictly construed." *Bauman*, 1992 WL 1738, at \*6. In fact, a violation of the notice provision in an insurance policy such as the one committed by the Abrams defendants is enough to allow an insurer to escape liability. This is clearly illustrated in *St. Paul Reinsurance Co. v. Williams & Montgomery, Ltd.*, No. 00 C 5037, 2001 WL 1242891, at \*4 (N.D. Ill. Oct. 17, 2001). The notice provision of the claims-made policy in the *St. Paul* case required notice to be given within thirty days of the complaint or demand. This requirement was not satisfied, and the court found that the notice provision was a condition precedent to coverage. As such, the violation was sufficient to allow the insurer to escape liability. *Id.* at \*4.

The American National policies at issue provide coverage only as to "claims first made against the insured during the policy period and reported to the company during the policy period." (Pl.'s LR 56.1(a)(3) ¶ 30), and they also include the following notice provision:

> In the event suit is brought against any Insured, the Insureds shall immediately forward to the Company every demand, notice, summons, complaint or other process received directly or by the Insured's representative. (*Id.* at ¶ 34.) (emphasis added).

Here, as discussed *supra*, the first policy period spanned from October 18, 1995 through October 18, 1996, and the three additional one-year renewals spanned the following three subsequent October 18 to October 18 periods. Harold Abrams and the firm were served on October 1, 1996 and Ron Abrams was served on December 8, 1997. As they did not believe that the American National policies provided coverage, none of the defendants **immediately** notified American National of the claims against them. Instead, they retained their own counsel and defended the suit until after the Illinois appellate court's June 1999 ruling.

Because the claim was first made by State Farm on October 1, 1996, the Abrams (including

Ron) only had a short period of time, until October 18[8] (the end of the policy period in which the claim was "first made"), to report the claim in compliance with the reporting requirement of the policy.[9] However, they did not report the claim to American National until July 15, 1999.[10] From a straight reading of these undisputed facts, it is apparent that the Abrams defendants failed to satisfy the immediate notice and same policy period reporting requirements. However, the Abrams defendants contend that, at least with respect to Ron Abrams, American National received timely "actual"[11] notice through various correspondences such that it had a duty to provide him with a

---

[8]To understand why the Abrams defendants had such a short period of time to provide notice, an understanding of the purpose behind claims-made policies is necessary. Again, as discussed *supra*, the purpose and function "of the reporting requirement of a claims made policy is to eliminate an insurer's 'tail' exposure by minimizing 'the time between the insured event and the payment.'" *Bauman*, 1992 WL 1738, at *5 (quoting *Chas T. Main, Inc. v. Fireman's Fund Ins. Co.*, 551 N.E.2d 28, 30 (Mass. 1990)).

[9]In making this determinations, the Court relies on the policy language pointed out by American National: "Claims alleging, based upon, arising out of or attributable to the same or related acts, errors or omissions shall be treated as a single claim regardless of whether made against one or more than one insured. All such claims, whenever made, shall be considered first made during the policy period . . . in which the earliest claim arising out of such act, errors or omissions was first made." (Pl.'s LR 56.1(a)(3) ¶ 31.) As the claims against the Abrams defendants all arise out of the same or related acts, the same reporting requirement applies to Ron Abrams even though he was served at a later time than the other defendants.

[10]The Court recognizes that an official tender is not required to satisfy the reporting requirement. Nevertheless, the Court finds that the Abrams defendants did not report the State Farm claim to American National until the point of tender. Our reasoning will be discussed *infra*.

[11]The Abrams defendants cite to *Cincinnati Cos. v. West American Insurance Cos.*, 183 Ill. 2d 317, 701 N.E.2d 499 (1998), an Illinois Supreme Court case holding that "an insurer's coverage obligation to its insured arises upon its receipt of actual notice of the suit against its insured." *Id.* at 183. Actual notice is notice sufficient to allow an insurer both to locate and defend the suit. *Id.*

defense.[12]

The Abrams defendants argue that American National had actual notice of the underlying suit as early as September 1997, when attorney Bernard Wolfe ("Wolfe") sent the company a letter placing them on notice of a potential professional liability claim against him by State Farm. The receipt of this letter was acknowledged on September 19, 1997, and Mr. Wolfe was informed that the matter was being reviewed and that he would be contacted by a litigation manager. However, the Court particularly notes that the letter indicated that it was referencing *Wolfe's* policy number.

They next rely on the February 19, 1998 letter from Alex Wayne & Associates to American National attaching information regarding Wolfe and a supplemental claim form that had been prepared by Wolfe on February 17, 1998. (Defs.' Mem. Supp. Summ. J. at p. 9.) As the supplemental claim form specifically sought information regarding additional or potential defendants, Wolfe attached a copy of the complaint. (*Id.*)

The Abrams defendants also refer the Court to a letter that Wolfe's attorney sent to Great American Insurance Company on March 9, 1998 that "amplifies" information Wolfe had previously provided  In it, he summarized the State Farm RICO case and, according to the defendants, specifically identifies them in the body of the letter. (*Id.*)

Finally, they point to the facts that Albert Arwas prepared a case summary on April 22, 1998 and the claim file checklist attached to it identified State Farm as the claimant and the date reported as September 19, 1997. (*Id.*) They point out that the "Case Facts" describes the case as "the State Farm Insurance Company against doctors and lawyers."

---

[12]Although the Court has acknowledged the policy language that makes the same reporting requirement applicable to Ron even though he was served later, the Court feels compelled to address the Abrams defendants' argument.

The Court does not find any of these correspondences sufficient to put American National on notice.[13] The Wolfe letter of September 1997 was insufficient as it made absolutely no connection to the Abrams defendants.[14] Moreover, the only connection the complaint provided to the Abrams defendants was their last name and the fact that they are attorneys.[15] The other

---

[13]The Abrams defendants seem to contend that the fact that American National received a copy of the complaint constitutes sufficient notice as a matter of law. They cite *Dearborn Insurance Co. v. International Surplus Lines Insurance Co.*, 308 Ill. App. 3d 368, 719 N.E.2d 1092 (1st Dist. 1999) for this proposition. However, as the Court sees it, the *Dearborn* court also considered the fact that the complaint was given to the insurer accompanied by a letter from its insured who was named in the complaint.

[14]*See Clinical Perfusionists, Inc. v. St. Paul Fire and Marine Ins. Co.*, 650 A.2d 285, 289 (Md. Ct. App. 1994)(A letter from a third-party insured implicated only the policy issued to him by St. Paul and was insufficient to constitute notice against other insureds under another policy. The court noted that notice would have been sufficient if the third-party insured had included in its letter that the other insured was involved in the incident and that they were also insured by St. Paul for professional liability.) *See also Bauman*, 1992 WL 1738, at *8 (Written communications to an insurer related to claims against other insureds under other policies did not constitute notice).

[15]*See National Union Fire Ins. Co. of Pittsburgh v. Baker & McKenzie*, 997 F.2d 305, 309 (7th Cir. 1993). The defendants argued that the insurer had timely notice because one of its employees had documents from which it could be inferred that a claim would eventually be made under the policy. The court responded by saying "to have drawn this inference [the employee] would have had to read and memorize all 899 names in Baker & McKenzie's application for insurance so that months later when he saw the names of the three lawyers in letters from another National Union insured the proverbial light bulb would have lit up in his brain." *Id.* at 309. While the court acknowledged that there was no requirement that notice come directly from the insured, it commented that "it does not follow that the requirement is satisfied by demonstrating that a sophisticated system of computerized data and retrieval might have enabled National Union through collation of documents from different sources to form an informed judgment that it was likely someday to receive a claim from Baker & McKenzie." *Id.* The Court agrees with this analysis. The Court cannot find as a matter of law that American National had notice of the underlying action on the grounds that the Abrams defendants' names appeared on a complaint forwarded by another insured under another policy. To do so would be to require insurers to memorize the names of every insured. *See also Bauman*, 1992 WL 1738, at *8 ("Illinois cases in which the "locate and defend" test is used involve[] . . . factual scenarios in which the insurer received notice of a claim against a **specific** insured under an **identifiable** policy.") (emphasis added).

correspondences they cite are also insufficient for the same basic reason. They simply did nothing that would alert American National that the Abrams defendants identified in the various correspondences held American National professional liability insurance policies.[16] Thus, American National was not put on notice until the suit was tendered to it in July 1999, literally *years* after the claims against them were first made. Surely this does not satisfy the policy's requirement that notice be immediate. Accordingly, there is no genuine issue of material fact as to whether the notice and reporting requirements were satisfied.[17] For this reason, summary judgment is appropriate.

However, even assuming that the Abrams defendants *had* satisfied the notice and reporting requirements, American National still had no duty to defend. In determining whether an insurer owes its insured a duty to defend, courts in Illinois look to the allegations contained in the complaint and compare them to the relevant coverage provisions in the insurance policy. *Hurst-Rosche*, 51 F.3d at 1342; *Western Cas. & Sur. Co. v. Adams County*, 179 Ill. App. 3d 752, 756, 534 N.E.2d 1066, 1068 (4th Dist. 1989). This is because the court's role is to "ascertain and enforce the intentions of the parties as expressed in the agreement." *Crum & Forster*, 620 N.E.2d at 1078. In

---

[16] For instance, the only reference to the Abrams defendants that the Court saw upon review of the March 9, 1998 letter from Wolfe's attorney was the name Abrams in the case title.

[17] The Court points to *Illinois Insurance Guaranty Fund v. Lockhart*, 152 Ill. App. 3d 603, 504 N.E.2d 857 (1st Dist. 1987). The insured's notice provision for its Uninsured Motorists Coverage policy required the insured to provide a copy of the summons and complaint immediately in the event that he ever institutes legal action against the person legally responsible for an accident. *Id.* at 860. The insurer did not find out that the insured had filed a lawsuit until nearly four years later. *Id.* at 858. The court found that the language in the policy was clear and unambiguous. *Id.* at 859. It stated, "[w]here the language of the insurance policy is written in clear and unambiguous terms, the language is to be construed and applied as written, unless it contravenes public policy." *Id.* The Court finds that the policy language in the Abrams defendants polices was clear and unambiguous, and notice nearly three years after the first defendants were served and nearly two years after the last defendant was served simply cannot constitute immediate notice.

doing this, "the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." *Id.*

An insurer is obligated to defend even if the allegations in the underlying lawsuit against its insured are only potentially within the scope of the policy. *Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co.*, 823 F.2d 1037, 1042 (7th Cir. 1987). In other words, "'[i]f the complaint states a claim that is within, or even potentially or arguably within, the scope of coverage provided by the policy,' the insurer is obligated to provide the insured a defense." *Hurst-Rosche*, 51 F.3d at 1342 (quoting *United States Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 578 N.E.2d 926, 930 (1991)). Moreover, courts construe complaints against insureds liberally, and any doubts as to potential coverage are resolved in favor of the insured. *Adams County*, 534 N.E.2d at 1068.

The fundamental question is whether the allegations in the underlying complaint fall within the scope of the policies at issue. As discussed, *supra*, the claims in the underlying action are for violations of the RICO statute and for fraud. The plaintiff's allegations against the Abrams defendants in that action were that the they were knowingly involved in a scheme whereby they would pursue claims against motorists who had rear-ended their clients in planned sudden-stop accidents. The policies provide coverage only for claims "arising out of the rendering or failure to render professional services for others in the Insured's capacity as a lawyer or notary public." (Pl.'s LR 56.1(a)(3) ¶ 35.) The major point of contention is whether or not the defendants were rendering professional services in their capacity as attorneys while participating in the scheme.

The Abrams defendants rely heavily on the appellate court's finding in the *State Farm* case that the actions constitute professional services. *See Abrams v. State Farm Fire & Cas. Co.*, 306 Ill.

App. 3d 545, 714 N.E.2d 92, 98 (1st Dist. 1999). However, that court's decision is not binding upon us.[18] The Illinois Supreme Court has defined the practice of law as: "the giving of advice or rendition of any sort of services by any person, firm or corporation when the giving of advice or rendition of such service requires the use of any degree of legal knowledge or skill." *People ex rel. Illinois State Bar Ass'n v. Schafer*, 404 Ill. 45, 87 N.E.2d 773 (1949). While this definition is quite broad, there is case law suggesting that an attorney engaging in fraudulent conduct is not rendering professional services in his or her capacity as an attorney.

The Court primarily looks to a relatively recent Illinois Supreme Court decision in which the court addressed the issue of when conduct is deemed to have arisen out of the "rendering of professional services" for purposes of coverage under professional liability policies. In *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 620 N.E.2d 1073 (1993), the court explained the nature of professional liability policies. According to the court, "[t]his type of policy provides: 'a specialized and limited type of coverage as compared to comprehensive insurance; it is designed to insure members of a particular professional group from the liability arising out of a special risk such as negligence, omissions, mistakes and errors inherent in the practice of the profession.'" *Id.* (quoting 7A J. Appleman & J. Appleman, Insurance Law & Practice § 4504.01, at 309 (rev. 1979)).

As the *Crum & Forster* court was dealing with the real estate profession, it held that "the risks undertaken by the insurers are those which are inherent in the practice of the real estate

---

[18]The Court acknowledges and agrees with American National's argument that the Illinois appellate court's decision is not binding upon this Court and there is no collateral estoppel or *res judicata* effect as the policies at issue are different (in that the current policies require the error, act or omission to have arisen out of the rendition of professional services for others in their capacity as attorneys) and American National was not a party to the underlying suit.

profession. Although there may be a myriad of risks to which one performing services in a real estate professional capacity may be exposed, covered risks are only those which inherently arise out of the rendering of real estate services." *Id.* at 1078 (emphasis added). The court then went on to hold that it was clear after a review of the allegations of the complaint that the claims did not arise out of the insured's rendition of real estate services because the complaint alleged that the insured's had committed intentional business torts and had engaged in unfair practices. *Id.* at 1079. The court noted, "[t]he risk of conducting one's business in an unfair and tortious manner is certainly not one inherent in the practice of the real estate profession.[19]" *Id.* Finally, the court stated that to construe these policies to cover the allegations in the complaint would expand coverage beyond what the parties contracted for and found that the facts did not fall potentially within the scope of the policy. *Id.* Thus, the insurers did not have a duty to defend. *Id.*

The Court agrees with this analysis and finds it applicable in the current case. It is unlikely that the parties intended the risk of the type of conduct alleged by State Farm to be covered by the policies.[20] Moreover, to hold otherwise would be to hold that the risk of fraud and RICO are inherent in the practice of law. This the Court cannot do.

The Court finds further support in a decision rendered by the United States Court of Appeals for the Ninth Circuit. In *Krasner v. Professionals Prototype Ins. Co. Ltd.*, 983 F.2d 1076 (9th Cir. 1993), the court held that "[w]hen the fraudulent conduct of an attorney is involved, the attorney is

---

[19]The court also noted that any professional services that were being rendered were "ancillary" to the improper conduct. *Id.* at 1079.

[20]It is notable that prior to the appellate court's decision finding that the alleged conduct constituted professional services, the defendants had been unable to find any other case to support such a proposition.

not acting in his capacity as an attorney." *Id*. at 1077. The court went on further to acknowledge the significance of facts that are analogous to this case - that the defendant in that case as in this case was not sued by his clients or their privies for acts related to the practice of law, and he, like the Abrams defendants, was sued by third parties based upon his allegedly intentional and fraudulent conduct. *Id*. Based on this case law, the Court finds that American National did not have a duty to defend.

It is well-settled in Illinois that the duty to defend is broader than the duty to indemnify. *See Tews Funeral Home*, 823 F.2d at 1042. Hence, if American National did not have a duty to defend, it clearly does not now have a duty to provide coverage. Thus, summary judgment is appropriate. As the Court has provided two fundamental grounds upon which it relies in ruling in favor of American National, we see no reason to proceed with an analysis of the merits of its policy exclusion arguments.

### Conclusion

For the above-mentioned reasons, plaintiff's motion for summary judgment [doc. no. 39] is granted and defendant's motion for summary judgment [doc. no. 38] is denied.

SO ORDERED:                    ENTER.  2/15/02

Ronald a. Guzman
HON. RONALD A. GUZMAN
United States Judge

-15-